## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## FORT MYERS DIVISION

VERNON BALLARD PARSONS, III,

      Plaintiff,

v.                                                    2:23-cv-742-JLB-NPM

MARIFE JOYNO CHANGCO,

      Defendant.

---

## ORDER

    Plaintiff Vernon Ballard Parsons initiated this action as a perjury claim against defendant Marife Joyno Changco (Parsons's ex-wife), alleging she made false statements under oath during their marital-dissolution proceedings in state court. (Doc. 1). He also moved to proceed in forma pauperis. (Doc. 2). But because there is no civil cause of action for perjury, the complaint failed to withstand review under 28 U.S.C. § 1915(e)(2), and the court dismissed the complaint. (Doc. 6). Parsons has since amended his complaint. The facts are unchanged, but he now seeks to recover damages under Florida's RICO statute. (Doc. 9). However, the amended complaint still fails to adequately state a claim and is otherwise frivolous, so it is again dismissed.

    During the parties' marital-dissolution proceedings, Changco requested an order compelling Parsons to provide temporary financial support. To obtain this

relief, she filed a verified motion stating she was unemployed. She purportedly repeated this assertion in an affidavit and under oath during the hearing on her motion. Parsons, however, claimed Changco was employed, and that her lack-of-income assertions were otherwise perjurious. Nevertheless, the state court ordered that Parsons provide Changco with financial support. But Parsons was "unable and unwilling" to pay. (Doc. 9 at 6). So, the judge ordered the forced sale of Parsons's home with half the equity proceeds to be paid to Changco. (Doc. 9-1 at 31-32, 49-51).

Apparently instead of (or in addition to) seeking post-judgment relief from the state trial court or the state appellate court,[1] Parsons brings this federal action to either induce a settlement that would avoid the forced sale of his home (as twice ordered by the state court) or to obtain a damages award for the equity awarded to Changco. He contends Changco's purportedly false testimony constitutes racketeering under Florida's RICO statute. (Doc. 9).

Under Florida law, a RICO claim may be stated by alleging the defendant: (1) acquired an interest in real property, (2) through a pattern of criminal activity. Fla. Stat. § 772.103(2). To establish a "pattern of criminal activity," a plaintiff must

---

[1] Indeed, it appears Parsons has tried and failed to appeal his case to Florida appellate courts on (at least) three occasions. *See Parsons v. Changco*, 380 So. 3d 526 (Fla. 2d DCA 2024); *Parsons v. Changco*, 357 So. 3d 673 (Fla. 2d DCA 2023); Doc. 5-1 at 15 (appeal to Florida's Fourth DCA).

show two or more incidents of criminal activity (or predicate acts), as well as a relationship and continuity among those predicate acts. Fla. Stat. § 772.102(4); *Wardak v. Goolden*, No. 1:19-cv-21121-RAR, 2020 WL 9718811, *7 (S.D. Fla. May 22, 2020).[2] Perjury can establish a predicate act. Fla. Stat. § 772.102(1)(a)(27).

Although not explicitly set forth in the amended complaint, it indicates that a RICO claim exists because Changco unlawfully acquired an interest in Parsons's home (half the equity from the forced sale) by engaging in a "pattern of criminal activity"—falsely asserting under oath that she was unemployed. His own allegations, however, belie this notion. Per the complaint, Changco's purported perjury induced the court into entering the financial support order. And it was apparently Parsons's defiance of this court order—through his self-proclaimed unwillingness to pay the financial support—that led the court to force the sale of the property and award half the equity to Changco. So, the RICO claim fails on its face. Still, the larger—and dispositive—issue for Parsons is his inability to satisfy the "continuity" element of a RICO claim.

RICO laws were designed to address crimes that are "part of a pattern of ongoing, continuing criminality or that involves criminality that promises to

---

[2] "Because of the similarities between Florida and federal RICO acts, Florida looks to federal authority regarding the interpretation and application of its act." *Palmas Y Bambu, S.A. v. E.I. Dupont De Nemours & Co.*, 881 So. 2d 565, 570 n.1 (Fla. 3d DCA 2004); *see also Jackson v. BellSouth Telecommunications*, 372 F.3d 1250, 1263 (11th Cir. 2004) ("[I]nterpretation of Florida's RICO law is informed by case law interpreting the federal RICO statute on which Chapter 772 is patterned." (internal citation omitted)). Thus, the court does so here.

continue into the future." *Jackson*, 372 F.3d at 1265; *Eagletech Commc'ns, Inc. v. Bryn Mawr Inv. Grp., Inc.*, 79 So. 3d 855, 864 (Fla. 4th DCA 2012) ("The purpose of the [RICO] statutes is to punish, through civil penalties, actions which are ongoing and criminal in nature.").[3] For this reason, continuity of criminal activity is the hallmark of a RICO claim, and establishing this element is crucial. This can be accomplished through either a closed- or open-ended concept. Parsons cannot establish either.

A closed-ended concept refers to a closed period of repeated conduct extending over a substantial period of time. *H.J. Inc. v. Nw. Bell Tel. Co.*, 492 U.S. 229, 241 (1989). "Predicate acts extending over a few weeks or months and threatening no future criminal conduct do not satisfy this requirement." *Id.* at 242. *See also* Fla. Stat. § 772.102(4) (excepting from a RICO claim "two or more incidents of fraudulent conduct arising out of a single contract or transaction against one or more related persons"). On the other hand, an open-ended concept requires a showing of past conduct that, by its nature, projects into the future with a threat of repetition. *Id.* To make such a showing, a plaintiff must establish "either that the racketeering acts themselves include a specific threat of repetition extending indefinitely into the future, or that the predicate acts or offenses are part of an

---

[3] Unless otherwise indicated, all internal quotation marks, citations, and alterations have been omitted in this and later citations.

ongoing entity's regular way of doing business." *Jackson*, 372 F.3d at 1265 (citing *H.J. Inc.* 492 U.S. at 242).

No closed-ended continuity exists. As alleged, Changco repeated the same false statement on three occasions to induce the court into ordering Parsons to provide her financial support. This is nothing more than a "single scheme with a discrete goal," to which Parsons was the sole "victim." *See Daedalus Cap. LLC v. Vinecombe*, 625 F. App'x 973, 976 (11th Cir. 2015) (holding the appellants cannot show closed-ended continuity because there was "only one victim" and "only a single scheme with a discrete goal"); *SCCY Indus., LLC v. Jannuzzo*, No. 6:17-cv-1495-ORL-31KRS, 2018 WL 3657570, *4 (M.D. Fla. Aug. 2, 2018) (citing *Jackson*, 372 F.3d at 1267). Further, Changco's repetition of the same allegedly perjurious statement occurred during a single marital-dissolution action. *Cf. Jackson*, 372 F.3d at 1267 (finding no continuity when "the alleged racketeering activity was related to the settlement of a single lawsuit, and, notably, was not designed to perpetrate racketeering with respect to a series of cases").

As for open-ended continuity, no ongoing threat exists that Changco will continue issuing false statements about her employment status under oath. As noted above, Changco supposedly perjured herself to induce a court award of financial relief. "[S]ingle schemes with a specific objective and a natural ending point can almost never present a threat of continuing racketeering activity." *Ferrell v. Durbin*,

311 Fed. App'x 253, 257 (11th Cir. 2009); *see also Vicom, Inc. v. Harbridge Merch. Servs., Inc.*, 20 F.3d 771, 783 (7th Cir. 1994) ("[W]e have made clear that schemes which have a clear and terminable goal have a natural ending point. Such schemes therefore cannot support a finding of any specific threat of continuity that would constitute open-ended continuity."). Plus, the state court already awarded Changco her requested financial relief (Doc. 9-1 at 18-19), and the dissolution proceedings appear closed. *See Vinecombe*, 625 F. App'x at 976-77 (affirming the district court's finding that "there is no threat that Appellees' alleged pattern of racketeering activity will continue into the future because their goal has been realized" (cleaned up)).

The inability to establish either closed- or open-ended continuity is fatal to any RICO claim, and the amended complaint is otherwise a frivolous and improper attempt to reverse or undermine the state-court order.[4] Accordingly, the complaint fails to satisfy § 1915(e)(2) review and is dismissed. In the absence of any Rule 72(a) objection within 14 days of this order, the clerk is directed to close the case. If any

---

[4] Of note, the court's subject-matter jurisdiction is dubious. There is no federal question asserted and, for purposes of diversity jurisdiction, the allegations concerning the amount in controversy appear insufficient. While Parsons asserts an amount in controversy of $76,228, he claims this represents half the *potential* equity in the home. And he bases this figure on *potential* market value (minus the *potential* balance of an outstanding mortgage). But the source of this *potential* valuation is unknown. So it appears that in response to any show-cause challenge by the court, Parsons may be unable to establish by a preponderance of the evidence that more than $75,000 was in controversy when he initiated this action.

such objection is timely filed, then the clerk is directed to withhold disposition until so ordered by a district judge.[5]

**ORDERED** on April 23, 2024.

_____
NICHOLAS P. MIZELL
United States Magistrate Judge

---

[5] Like all dispositions—recommended or not—entered by a magistrate judge, this order is reviewable by a district court judge. Generally, parties who timely object to a magistrate judge's action are entitled to clear-error review. *See* 28 U.S.C. § 636(b)(1)(A); Fed. R. Civ. P. 72 advisory committee notes (explaining that Rule 72(a) objections correspond to matters referred under § 636(b)(1)(A), and Rule 72(b) objections correspond to matters referred under § 636(b)(1)(B)). There are eight exceptions. *See* 28 U.S.C. § 636(b)(1)(A). This is not one of them. *See Wachovia Bank, N.A. v. Deutsche Bank Tr. Co. Americas*, 397 F. Supp. 2d 698, 701 (W.D.N.C. 2005) ("[T]he language of § 636(b)(1)(A) is exceedingly clear that a magistrate judge may 'hear and determine any pretrial matter pending before the court, except' a very specific list of eight matters. Congress would be hard-pressed to use language more clearly indicating its intent to create an exhaustive list than 'any…except.'"). While § 636 excepts motions to dismiss for failure to state a claim upon which relief can be granted—that is, a Rule 12(b)(6) motion made by an opposing party—this order does not dispose of such a motion. Rather, it fulfills the court's duty to screen in forma pauperis complaints to ensure that neither the court, the clerk, nor anyone else is burdened by actions that are frivolous, malicious, or a waste of time. *See* 28 U.S.C. 1915(e)(2)(B). Thus, this order expressly preserves Parsons's right to seek Rule 72(a) review.